EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio Plaza del Mar, etc.<br>    Demandantes-reconvenidos<br>    recurridos<br><br>        vs.<br><br>Kathy Jetter Klare y otros<br>    Demandados<br><br>Antilles Insurance Co.; Royal & Sun Alliance Ins. Co.<br>    Demandados contra coparte<br>Milagros Troia y otros<br>    Demandados reconvinentes<br>    Demandantes contra coparte<br>    Demandantes contra terceros-<br>    Peticionarios<br><br>        vs.<br><br>Mirtha González Rodríguez, et al.<br>    Terceros demandados<br><br>----------------------------------<br>Consejo de Titulares del Condominio Plaza del Mar, etc.<br>    Demandante-peticionario<br><br>        vs.<br><br>Kathy Jetter Klare y otros<br>Demandados-recurridos | Certiorari<br><br>2006 TSPR 180<br><br>169 DPR ____ |

Número del Caso: CC-2003-454
                CC-2003-458

Fecha: 1 de diciembre de 2006

Tribunal de Apelaciones:

                        Circuito Regional VII Carolina-Fajardo

Juez Ponente:
                        Hon. Zaida Hernández Torres

Abogados de la Parte Demandante-Peticionaria:

                        Lcdo. Mario A. Prieto Batista

Abogados de Milagros Troia y otros:

                        Lcda. Evelyn Mendez Figueroa
                        Lcdo. Alberto Omar Jiménez Santiago
                        Lcdo. Luis H. Sánchez Caso

Abogado de Carlos Padilla Santiago y Orlando Cosme Arrufat:

Lcdo. Sigrid López González

Abogados del Departamento de Asuntos del Consumidor:

Lcda. Noema Giralt Armada
Lcdo. José A. Maisonet Trinidad

Abogada de Royal & Sun Alliance Ins. Co.:

Lcda. Milagros Del Carmen López

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del Condominio
Plaza del Mar, etc.
        Demandantes-reconvenidos
        recurridos

            vs.

Kathy Jetter Klare y otros
        Demandados

Antilles Insurance Co.; Royal
& Sun Alliance Ins. Co.
        Demandados contra coparte
Milagros Troia y otros
        Demandados reconvinentes
        Demandantes contra coparte
        Demandantes contra terceros-
          peticionarios

            vs.

Mirtha González Rodríguez, et al.
        Terceros demandados

----------------------------------------
Consejo de Titulares del Condominio
Plaza del Mar, etc.
        Demandante-peticionario

            vs.

Kathy Jetter Klare y otros
        Demandados-recurridos

CC-2003-454
Cons. CC-2003-458

CERTIORARI

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO
SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 1 de diciembre de 2006

El Condominio Plaza del Mar --en adelante, el "Condominio"-- sito en la Avenida Isla Verde del Municipio de Carolina, es un edificio residencial sometido al régimen de propiedad horizontal. Para el momento de las

reclamaciones hechas en la demanda que origina el recurso hoy ante nuestra consideración, el agente administrador del Condominio era el señor Fermín Villalba y los puestos directivos de la Junta de Directores del mismo recaían sobre los siguientes titulares: 1) Kathy Jetter Klare como Presidenta[1]; 2) Milagros Troia como Vice Presidenta; 3) Eduardo Colón Castro como Tesorero; 4) Ileana Matos como Secretaria; y 5) Ramonita Parisi como Vocal.

Luego de culminada la incumbencia de estos en el año 2000[2], el 10 de abril de 2001 el Consejo de Titulares del Condominio Plaza del Mar[3] --en adelante, "Consejo de Titulares" o "consejo"-- presentó ante el Tribunal de Primera Instancia, Sala Superior de Carolina, una demanda sobre daños y perjuicios en contra de Kathy Jetter Klare,

---

[1] Entre las alegaciones hechas en la demanda, se aduce que la señora Kathy Jetter Klare fue Presidenta de la Junta de Directores del Condominio Plaza del Mar desde 1995, a pesar de que desde el 19 de enero de 1995 transmitió a otra persona su titularidad sobre el único apartamento que poseía en el referido condominio.

[2] La señora Kathy Jetter Klare fungió como Presidenta de la Junta de Directores desde el 1995 hasta marzo de 2000, fecha en que renunció a dicho puesto. Así las cosas, la señora Milagros Troia asumió la presidencia hasta el 31 de agosto de 2000, fecha en que Mirtha González Rodríguez fue proclamada Presidenta, luego de celebrada la elección correspondiente a fines de marzo de 2000.

[3] El Consejo de Titulares compareció ante el Tribunal de Primera Instancia representado por Mirtha González Rodríguez, Presidenta de la Junta de Directores a la fecha de la presentación de la demanda.

Fermín Villalba, y los demás ex miembros de la antigua Junta de Directores, entre otros.[4]

En ésta, entre otras reclamaciones, adujeron que Milagros Troia, Eduardo Colón Castro, Ileana Matos y Ramonita Parisi --en adelante, "ex directores"-- incurrieron en negligencia crasa e incumplimiento con el deber de lealtad hacia el Consejo, al permitir que la señora Kathy Jetter Klare y el señor Fermín Villalba malversaran fondos pertenecientes a la comunidad.[5] El

---

[4] En la demanda se incluyen reclamaciones en contra de los contadores públicos autorizados y contratistas independientes que realizaron trabajos durante la presidencia de la señora Kathy Jetter Klare. También se incluyeron como partes demandadas las compañías aseguradoras que expidieron pólizas para cubrir riesgos comos los reclamados en la demanda.

[5] Entre las alegaciones hechas en la demanda, se le imputan a Kathy Jetter Klare varias actuaciones constitutivas de malversación y apropiación de fondos pertenecientes a la comunidad del aludido condominio. Entre éstas, la contratación de servicios y trabajos para las áreas comunales por precios exorbitantes, sin la autorización del Consejo de Titulares, con el propósito de apropiarse personalmente de las sumas pactadas en exceso, las cuales suman $166,130.00. También se le imputa la apropiación ilegal de fondos pertenecientes al condominio o a titulares particulares, como compensación por los daños ocasionados por el huracán Georges, depositando los mismos en sus cuentas personales mediante endoso falsificado. Para el momento de la presentación de la demanda, se habían identificado 6 cheques expedidos a la orden de terceras personas y depositados en distintas cuentas personales de Kathy Jetter Klare, los cuales suman $40,516.12. Se le imputa además la contratación de una compañía que le pertenecía --Spotless Janitorial Services-- para los servicios de limpieza y mantenimiento del condominio. Dicho contrato estipulaba una mensualidad de $5,200.00 a favor de Kathy Jetter Klare. Por otro lado, a Fermín Villalba se le imputa negligencia en el desempeño de sus deberes y responsabilidades como administrador debido a que, a sabiendas de que los contratos y pagos que

(Continúa ...)

Consejo de Titulares solicitó entonces que se les impusiera responsabilidad solidaria a los codemandados por los daños sufridos a causa de la mala administración y la malversación de fondos perpetrada por Kathy Jetter Klare y Fermín Villalba.[6]

Así las cosas, Ileana Matos, Margarita Troia y su esposo Salvatore Troia, el Lic. Eduardo Colón Castro y su esposa Rosita Cortés Hernández, Ramonita Parisi y su esposo Salvatore Parisi, y sus respectivas sociedades conyugales, contestaron la demanda enmendada aduciendo, en síntesis, que el Departamento de Asuntos del Consumidor (en adelante, "DACO") poseía jurisdicción exclusiva para atender el caso y que las alegaciones hechas en la demanda ya habían sido previamente presentadas ante dicha agencia.

_____

realizaba la señora Kathy Jetter Klare no estaban justificados o eran exorbitantes, no alertó a la Junta de Directores ni al Consejo de Titulares sobre ello. De igual forma, alegaron que éste se apropió de fondos pertenecientes al Consejo de Titulares depositando los mismos en su cuenta personal o disponiendo de los mismos. Hasta el momento de la presentación de la demanda, se pudo identificar un cheque de $9,244.39 a la orden del titular Adolfo Rodríguez por daños a su apartamento debido al huracán Georges. Éste fue depositado en la cuenta personal de Fermín Villalba, bajo el nombre de Germán F. Villalba Sierra mediante endoso falsificado. Se colige del expediente que en contra de Kathy Setter Klare se presentaron cargos criminales por la conducta antes desglosada.

[6] La demanda antes señalada fue posteriormente enmendada para incluir como partes demandadas a los cónyuges de los ex directores y sus respectivas sociedades de bienes gananciales. A pesar de ello, de la misma no surgen alegaciones específicas en contra de estos.

Luego de varios trámites procesales[7], estos últimos presentaron una solicitud de desestimación ante el Tribunal de Primera Instancia. En la misma, adujeron que la Ley de Propiedad Horizontal, vigente al momento de los hechos, no reconocía una causa de acción en contra de los ex directores de un condominio por haber incurrido en negligencia crasa o faltado al deber de lealtad durante su incumbencia y que, en todo caso, el DACO poseía jurisdicción exclusiva para entender en las reclamaciones aquí involucradas.

A su vez, Rosita Cortés Hernández, Salvatore Troia y Salvatore Parisi —cónyuges de tres ex directores de la antigua Junta de Directores— y sus respectivas sociedades

---

[7] Del expediente surge que los ex directores y sus respectivos cónyuges y sociedades de bienes gananciales presentaron una Demanda contra Coparte en contra de Antilles Insurance Company y Royal Sun Alliance, compañías aseguradoras demandadas, y una reconvención en contra del Consejo de Titulares, aduciendo que este último no cumplió con los términos de la póliza de seguros expedida por Antilles Insurance Company. También presentaron una demanda contra tercero en contra de los miembros de la nueva Junta de Directores aduciendo que estos fueron negligentes al privarles de la cubierta y defensa bajo el contrato de seguro suscrito con Antilles Insurance Company, al no renovar la póliza con la misma aseguradora, ni solicitar o adquirir a tiempo una extensión de la cubierta. De igual forma, Royal Sun Alliance solicitó la desestimación sumaria de la reclamación en contra suya aduciendo que las reclamaciones hechas en la demanda no se encuentran cubiertas por la póliza, debido a que surgen de hechos anteriores a la expedición de la misma. Dicha solicitud fue declarada no ha lugar por el Tribunal de Primera Instancia, pues, según aducido por el consejo en su oposición a la moción en cuestión, la póliza expedida expresamente cubre actos ocurridos antes de la vigencia de la póliza pero reclamados durante dicho período.

de bienes gananciales, solicitaron la desestimación de la reclamación aduciendo, en síntesis, que el Consejo de Titulares no había hecho, en la demanda enmendada, reclamaciones específicas en su contra y que la participación de sus cónyuges, como miembros de la antigua Junta de Directores, fue una voluntaria y no remunerada que no generó beneficio económico para las respectivas sociedades de bienes gananciales. Señalaron, además, que procedía la desestimación solicitada debido a que el Consejo de Titulares no alegó que las sociedades de bienes gananciales respondían subsidiariamente de la sentencia que pudiera algún día recaer en contra de los ex directores en su carácter privativo.

El Consejo de Titulares presentó oportuna oposición al respecto. Adujo que la Ley de Propiedad Horizontal claramente impone un deber de diligencia sobre los titulares que forman parte de la Junta de Directores y que el incumplimiento con dicho deber conlleva responsabilidad civil extracontractual. Con respecto a la alegada jurisdicción exclusiva del DACO, sostuvo que la jurisdicción conferida por la Ley de Propiedad Horizontal a dicha agencia no se extendía a la presente causa de acción. Alegó en apoyo de su señalamiento que el Artículo 42 y el Artículo 48 de la referida Ley tienen el propósito de establecer la jurisdicción exclusiva del DACO para acciones de uno o más titulares contra la Junta de Directores o el Consejo de Titulares y no para acciones en

las cuales el Consejo de Titulares les reclama a los antiguos directores en su carácter personal.

Por último, y en cuanto a la desestimación solicitada por los cónyuges de los ex directores demandados, el Consejo señaló que la falta de remuneración no significaba que las sociedades de bienes gananciales no se beneficiaron de las gestiones realizadas por uno de sus miembros como director de la antigua Junta. Sostuvo que no era necesaria una alegación explícita en contra de las sociedades conyugales, habida cuenta de que las gestiones de los directores no se hace para beneficio privativo, sino en representación y para beneficio del titular, entiéndase, la sociedad de bienes gananciales. Arguyó además que, aún si se tratara de una reclamación en contra del cónyuge-director en su carácter privativo, no era necesario alegar, en esta etapa de los procedimientos, que éste no tiene bienes suficientes y que la sociedad conyugal responde subsidiariamente, pues, no contaban con la sentencia que les permitiría descubrir información respecto a los bienes disponibles para satisfacer la misma. No obstante todo lo antes señalado, adujo el Consejo, en la alternativa, que la falta de alegaciones específicas en contra de los cónyuges y las sociedades de bienes gananciales no conllevaba la desestimación, sino una autorización para enmendar la demanda expresando específicamente que las sociedades conyugales se

beneficiaron por la gestión de sus respectivos cónyuges, ex directores de la antigua Junta en cuestión.

El Tribunal de Primera Instancia, mediante resolución emitida el 31 de octubre de 2002, denegó las mociones de desestimación antes esbozadas, tomando como fundamento lo expresado en la oposición presentada por el Consejo de Titulares. De dicha determinación, los ex directores, sus cónyuges y sus respectivas sociedades conyugales, solicitaron reconsideración ante el tribunal de instancia. En la misma, se reiteraron en los argumentos anteriormente esbozados en sus solicitudes de desestimación; señalando además que, previo a la presentación de la demanda ante el Tribunal de Primera Instancia, se presentaron ante el DACO varias querellas alegadamente relacionadas con las controversias en cuestión y que, a pesar de que éstas podían ser reabiertas a solicitud de los querellantes, estos optaron por presentar la demanda que dio inicio al caso de epígrafe. El Tribunal de Primera Instancia rechazó de plano la reconsideración solicitada.

Inconformes, los ex-directores acudieron --mediante recurso de *certiorari*-- ante el entonces Tribunal de Circuito de Apelaciones. Adujeron, en síntesis, que el DACO poseía jurisdicción exclusiva sobre la controversia en cuestión; que la Ley de Propiedad Horizontal no reconocía una causa de acción en daños en contra de los ex directores de una junta, y que no procedía la acumulación,

como partes demandadas, de los cónyuges y las sociedades conyugales aquí involucradas.

El tribunal apelativo intermedio revocó, en parte, la resolución del Tribunal de Primera Instancia. Entendió que el DACO poseía jurisdicción exclusiva sobre la reclamación en contra de los pasados miembros de la antigua Junta de Directores. En cuanto a los restantes errores señalados, determinó que no existe disposición alguna en la Ley de Propiedad Horizontal que les conceda inmunidad a los antiguos miembros de una junta de directores y que, sujeto a las enmiendas pertinentes, la reclamación en contra de los cónyuges y las sociedades de bienes gananciales en cuestión debía continuar ante el Tribunal de Primera Instancia. Conforme a lo antes esbozado, el aludido foro ordenó la reapertura de las querellas previamente presentadas ante el DACO y la preterición del trámite ante el Tribunal de Primera Instancia hasta que el DACO emitiese resolución al respecto.

Insatisfecho, el Consejo de Titulares acudió --mediante recurso de *certiorari*-- ante este Tribunal. Aduce que procede revocar la Sentencia emitida por el foro apelativo intermedio debido a que éste incidió:

> … al determinar que el Tribunal de Primera Instancia carecía de jurisdicción en cuanto a la causa de acción presentada en contra de los pasados miembros de la Junta de Directores del Condominio Plaza del Mar.

De igual forma, los ex directores, sus cónyuges y sus respectivas sociedades conyugales, acudieron --mediante recurso de *certiorari*-- ante este Tribunal. Alegan que procede revocar la Sentencia emitida por el foro apelativo intermedio debido a que éste incidió:

> … al confirmar el dictamen del Tribunal Superior, y determinar que no existe una exclusión de antijuricidad en la Ley de Propiedad Horizontal para proteger a los directores del órgano ejecutivo de un condominio, contra reclamaciones civiles por negligencia en su desempeño.

> … al confirmar la Resolución dictada por el Tribunal de Primera Instancia, y concluir que procede una demanda contra los cónyuges de ex directores de una edificación sometida al Régimen de Propiedad Horizontal porque estos, como propietarios del condominio, se benefician económicamente de las actuaciones de la junta directiva donde se desempeñaron ad honorem.

Emitimos Resolución ordenando la consolidación y expedición de ambos recursos de certiorari. A su vez, le concedimos término al DACO para que, en calidad de *amicus curiae*, compareciera ante este Tribunal y expresara su posición sobre su jurisdicción para adjudicar la presente controversia. Dicha Agencia ha comparecido en cumplimiento de lo ordenado.

Contando con la comparecencia de ambas partes y la del DACO, nos encontramos en posición de resolver.

II

Conforme al detallado trasfondo fáctico, nos corresponde resolver las siguientes controversias:

A.    ¿Se encuentran exentos de responsabilidad los pasados miembros de una antigua Junta de Directores de un condominio ante reclamaciones del Consejo de Titulares, por sus actuaciones y omisiones negligentes mientras ocuparon sus puestos directivos?;

B.    De no estar exentos, ¿Posee el DACO jurisdicción exclusiva sobre dicha reclamación en contra de los ex miembros de la antigua Junta de Directores?; y

C.    por último, ¿Procede la acumulación de los cónyuges de los antiguos miembros de una junta de directores y sus respectivas sociedades de bienes gananciales como partes demandadas en una causa de acción en daños por las actuaciones y omisiones negligentes de los ex directores durante su incumbencia?

III

-A-

En virtud de las disposiciones del Artículo 1802 del Código Civil, 31 L.P.R.A. § 5154, todo aquel que cause daño a otro, interviniendo culpa o negligencia, vendrá obligado a reparar el daño causado. Para ello, es imprescindible que la parte demandante establezca mediante prueba los siguientes requisitos: 1) la existencia de una acción u omisión culposa o negligente; 2) la antijuricidad de la misma; 3) la producción de un daño; y 4) la relación

causal entre la acción u omisión y el daño. Valle Izquierdo v. E.L.A., 157 D.P.R. 1 (2002).

Particularmente cuando el daño alegado se debe a una omisión por parte del demandado, hemos sido enfáticos al manifestar que la imposición de responsabilidad conllevará la consideración de varios factores, a saber: 1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño; y 2) si de haberse realizado el acto omitido se hubiera evitado el daño alegado. Santiago Colón v. Supermercados Grande, res. el 24 de enero de 2006, 2006 T.S.P.R. 12; Bacó v. ANR Construction Corp., res. el 23 de septiembre de 2004, 2004 T.S.P.R. 154; Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986).

De igual forma, hemos manifestado que la norma esbozada en el Artículo 1802 del Código Civil, *ante*, es una de amplio alcance, pues "se enuncia en forma general y sin concretarse a determinados tipos de infracción, lo que presupone una norma genérica que nos prohíbe causar daño a otro mediante conducta ya sea activa, ya pasiva". Soc. Gananciales v. G. Padín Co., Inc., *ante*, pág 105.

"El concepto de culpa recogido en el Artículo 1802 es infinitamente abarcador, tanto como lo pueda ser la conducta humana". García Gómez v. E.L.A., res. el 24 de febrero de 2005, 2005 T.S.P.R. 14; Valle Izquierdo v. E.L.A., *ante*. La amplitud de la norma allí enunciada y la

generalidad de los conceptos en que se encuentra cimentada "permiten que el derecho de responsabilidad civil extracontractual responda a los cambios y necesidades sociales de la época." López v. Porrata Doria, res. el 4 de octubre de 2006, 2006 T.S.P.R. 149.

No obstante la amplitud reconocida, la responsabilidad civil extracontractual sólo se extiende a conducta considerada antijurídica. Existen varias causas excluyentes de antijuricidad[8], entre éstas, los distintos supuestos de inmunidad reconocidos en nuestro ordenamiento jurídico por razones de orden o política pública. A modo de ejemplo, podemos mencionar la Ley del Buen Samaritano, la inmunidad de los médicos empleados del Estado, la inmunidad patronal, la inmunidad interfamiliar, la prohibición de acciones de un cónyuge o ex cónyuge contra el tercero adúltero por alienación de afectos, la prohibición de responsabilizar a un médico por los costos de manutención de una criatura nacida como consecuencia de una esterilización negligente, y la inmunidad condicionada de jueces y fiscales.

---

[8] "Hay varias causas excluyentes de antijuricidad…, a saber: 1) El obrar en el ejercicio legítimo de un derecho subjetivo…; 2) Cuando está autorizada la legitima defensa, el obrar en estado de necesidad o la utilización de la acción directa…; 3) Cuando el perjudicado consiente el daño; 4) Cuando se actúa en interés del ofendido o afectado y en consideración a su voluntad real o presunta, como es el caso de la gestión de negocio sin mandato…; y 5) Cuando existe un pacto excluyente de responsabilidad…." C. J. Irizarry Yunqué citando a Santos Briz, Responsabilidad Civil Extracontractual, Cuarta Edición, San Juan, 2000, págs. 23-24.

Salvo disposición expresa concediéndole inmunidad a un grupo o sector de la población, debemos entender que estos se encuentran sujetos a la imposición de responsabilidad civil extracontractual por sus actos u omisiones negligentes o culposas. "La norma general es que existe responsabilidad en todo caso que medie culpa o negligencia, y no podría interpretarse válidamente que se creó una excepción por el mero silencio." Feliciano Rosado v. Honorable Pablo Matos, Jr., 110 D.P.R. 550, 565 (1981). La ausencia de legislación específica que establezca la disponibilidad de una causa de acción en daños en contra de una persona o grupo en particular, sólo implica que debemos remitirnos a la norma general de daños contenida en el Artículo 1802 del Código Civil, *ante*. Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991); Feliciano Rosado v. Honorable Pablo Matos, Jr., *ante*.[9] Ello es cónsono con el Artículo 12 del Código Civil, 31 L.P.R.A. § 12, el cual estipula que la deficiencia de las leyes especiales se suplirá por las disposiciones de dicho cuerpo legal.

-B-

Establecido el alcance de la responsabilidad civil extracontractual, analizamos las disposiciones pertinentes

---

[9] Los casos citados esbozan la norma aplicable a la inmunidad condicionada de los jueces y los fiscales. En ambos casos, este Tribunal hizo la salvedad de que, ante reclamos de inmunidad, el análisis debe enmarcarse, inicialmente, dentro de la norma general de daños del Artículo 1802 del Código Civil.

de la Ley de Propiedad Horizontal, según enmendada. La Ley

de Propiedad Horizontal, vigente al momento de los hechos,

Ley Num. 104 del 25 de junio de 1958 según enmendada por

la Ley Núm. 157 del 4 de junio de 1976, delegó en la Junta

de Directores, órgano ejecutivo de la comunidad de

titulares, varios deberes y facultades, entre estos:

> Artículo 38-D, 31 L.P.R.A. § 1293b-4:
>
> (a)Atender todo lo relacionado con el buen
> gobierno, administración, vigilancia y
> funcionamiento del régimen y en especial lo
> relativo a las cosas y elementos de uso común y
> los servicios generales, y hacer a estos efectos
> las oportunas advertencias y apercibimientos a
> los titulares. . . . .
>
> (i) Cumplir y hacer cumplir las disposiciones de
> esta ley, del reglamento y los acuerdos del
> Consejo de Titulares. . . . (Énfasis nuestro).

La responsabilidad fundamental de la Junta de

Directores "estriba en velar por el buen funcionamiento

del condominio logrando que se ejecuten las disposiciones

de la Ley de Propiedad Horizontal, las de la Escritura

Matriz, del Reglamento del Condominio, así como los

acuerdos que se hayan aprobado en reuniones debidamente

convocadas por el Consejo de Titulares." M. J. Godreau,

Personalidad jurídica, legitimación activa y propiedad

horizontal: Capacidad legal de la Junta de Directores y

del Presidente para llevar acciones a nombre del

condominio, 64 Rev. Jur. U.P.R. 481, 481 (1995). Véase

además, Amill Bracer v. J. Condominio Pumarada, 156 D.P.R.

495 (2002); Srio. DACO v. J. Condominios C. Martí, 121 D.P.R. 807 (1988).

Salvo los deberes allí enumerados, nada se dispuso sobre la disponibilidad de una causa de acción en daños en contra de los directores, por el desempeño negligente de sus funciones.

En el año 2003, dicho estatuto fue objeto de enmienda.[10] Dicha versión enmendada conservó los deberes antes citados. No obstante, en el Artículo 38 (a) (1), 31 L.P.R.A. § 1293b, el legislador dejó claramente establecido que "[l]os directores responderán personalmente por sus acciones mientras actúen como tales, sólo cuando incurran en delito, fraude o negligencia crasa". Mediante ello, el legislador se hizo eco de lo recomendado por el Profesor Michel J. Godreau en su libro El Condominio, donde éste propuso "que la responsabilidad de los integrantes de la Junta de Directores [,] por actos perjudiciales contra el resto de los titulares [,] les sea impuesta sólo en casos donde medie negligencia crasa o delito". M. J. Godreau, El Condominio, San Juan, Puerto Rico, Editorial Dictum, 1992, pág. 144. Su análisis estuvo dirigido a que la responsabilidad de los directores por sus actos u omisiones negligentes debía delimitarse para que prosperara únicamente ante supuestos de negligencia

---

[10] Ley Núm. 103 del 5 de abril de 2003, 31 L.P.R.A. § 1291, et seq.

crasa o delito, pues la gestión de estos se desempeña *ad honorem*.

-C-

"La Ley de Propiedad Horizontal… establece mecanismos para la tramitación de los inevitables conflictos dimanantes del *modus vivendi* de un condominio.   . . .". Amill Bracer v. J. Condominio Pumarada, *ante*, pág. 499. "[Así pues,] encomendó al ... DACO la rápida adjudicación de los reclamos que pudieran presentar los condóminos, relativos a la administración del edificio. ... [L]e confirió jurisdicción exclusiva para entender en acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda." Amill Bracer v. J. Condominio Pumarada, *ante*, pág. 500. Véase además, Srio. DACO v. J. Condominios C. Martí, *ante*; First Fed. Savings v. Asoc. De Condómines, 114 D.P.R. 426 (1983).

Dicha jurisdicción exclusiva quedó trazada por primera vez en los Artículos 42 y 48 de la Ley de Propiedad Horizontal del 1976, los cuales, al momento de los hechos en cuestión, establecían:

Artículo 42:

Los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del

titular que somete al inmueble al régimen que establece esta ley, durante el período de administración que contempla el Artículo 36-A, del Presidente y del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a la vivienda, serán impugnables ante el Tribunal Superior por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al reglamento a que hace referencia el Artículo 36.

La acción de impugnación de acuerdos y determinaciones, que el titular estimase gravemente perjudiciales para él o para la comunidad de titulares deberá ejercitarse dentro de los treinta (30) días siguientes a la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. Si se tratarse de una actuación u omisión perjudicial, el plazo para ejercitar la acción de impugnación, será dentro de los treinta (30) días siguientes a la fecha en que el titular tenga conocimiento de tal actuación u omisión perjudicial.

Al ejercitar la acción de impugnación de acuerdos del Consejo de Titulares, el titular deberá acreditar que estuvo presente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada.

Luego de oír a las partes en controversia, el Tribunal decidirá lo que corresponda conforme a derecho, equidad y normas de buena convivencia. El acuerdo, la determinación, omisión o actuación serán provisionalmente válidos, salvo que el Tribunal determine lo contrario.

Artículo 48:

Las acciones de impugnación reconocidas en el Artículo 42 que surjan en relación con la administración de inmuebles que comprendan por lo menos un apartamiento destinado a vivienda se

radicarán en el Departamento de Asuntos del Consumidor. ...

La designación del DACO como foro administrativo ante el cual los titulares de un condominio pueden acudir a plantear y ventilar sus querellas, fue de gran trascendencia, pues previo a su creación, la ausencia de un foro administrativo había desalentado la compra de apartamientos en inmuebles sometidos al régimen de propiedad horizontal. Exposición de Motivos de la Ley Num. 157 del 4 de junio de 1976, 1976 Leyes de Puerto Rico 485. "Los titulares de apartamientos destinados a vivienda no [tenían] disponible un foro adecuado ante el cual ... [podían] ventilar acuerdos, determinaciones, omisiones o actuaciones del Consejo o de la Administración que les [fueran] perjudiciales o que [fueran] contrarios a la Ley. El foro judicial generalmente [resultaba] demasiado costoso para los titulares de apartamientos residenciales." F. Hernández Denton, La Ley de Propiedad Horizontal– Un análisis de las enmiendas del 1976, 44 (Núm. 2) Rev. C. Abo. P.R. 257, 264 (mayo, 1983).

Así pues, acorde con los poderes conferidos por la referida ley, el DACO promulgó el Reglamento Núm. 2348 sobre Condominios. En éste, se dispuso lo siguiente en cuanto a la jurisdicción del Departamento:

PARTE VI QUERELLAS

SECCIÓN 18      JURISDICCIÓN DEL DEPARTAMENTO

Cualquier Titular o grupo de Titulares de un condominio podrá impugnar ante este Departamento cualquier acuerdo del Consejo de titulares y cualquier determinación, omisión o actuación del Director o de la Junta de Directores o de la persona que someta el inmueble al régimen de Propiedad Horizontal, mientras éste sea a su vez, el Administrador Interino del condominio, y cualquier acuerdo, determinación, omisión o actuación del presidente o del secretario de la Junta de Directores concernientes a la administración del inmueble, siempre y cuando el acuerdo, determinación, omisión o actuación en cuestión sea gravemente perjudicial para el titular que impugna o para la comunidad de titulares o cuando dicho acuerdo, determinación, omisión o actuación sea contrario a la ley, a la escritura de constitución de propiedad horizontal del condominio o al Reglamento que regula todo lo concerniente a su administración.
...

Fue así como el DACO se convirtió en la agencia a través de la cual se canaliza la solución de los problemas que puedan suscitarse en la vida comunitaria de un edificio acogido al régimen de propiedad horizontal. Srio. DACO v. J. Condominios C. Martí, *ante*.

No obstante, la jurisdicción exclusiva conferida al DACO no se extiende a toda posible causa de acción dimanante de un condominio sometido al régimen de propiedad horizontal. El DACO tiene jurisdicción para dirimir las controversias suscitadas por acciones u omisiones de la Junta de un condominio y sobre los actos que no sean de índole voluntaria o que trasciendan los intereses personales y privados de los titulares o de los condominios. Srio. DACO v. J. Condominios C. Martí, *ante*.

De igual forma, y según surge de la interpretación del DACO en su comparencia como *amicus curiae*, la Ley de Propiedad Horizontal del 1976 no le confirió jurisdicción para dirimir reclamaciones o acciones que puedan hacerse entre sí los titulares o aquellas presentadas por el director o la Junta de [D]irectores en representación del Consejo de Titulares en contra de un titular. Al respecto, el DACO nos plantea que:

> "... [S]i el titular o grupo de titulares de un condominio ejercita la acción de impugnación que le autorizan los Artículos 42 y 48 de la Ley, y a la vez solicita indemnización que pudiera corresponderle bajo el Código Civil por daños ocasionados por la conducta negligente de los cuerpos ejecutivos del Condominio, este Departamento podría adjudicar ambas reclamaciones al estar autorizado para ello, por virtud de los dispuesto en el Artículo 51 [de la concernida Ley]. Sin embargo, no es esa la situación del caso de autos. Las facultades conferidas al Departamento están encaminadas a procurarle a la parte más débil dentro de la estructura organizacional del Régimen de Propiedad, de un foro accesible y menos riguroso que un tribunal, que le permita presentar reclamaciones contra las acciones u omisiones de las estructuras ejecutivas del condominio, que cuentan a su favor con todos los recursos que tenga a su disposición la comunidad, como lo son el Consejo de Titulares y la Junta de Directores. <u>Al Departamento nunca le ha sido conferida jurisdicción para atender reclamos que puedan realizarse entre sí los titulares o aquellas presentadas por el director o la Junta de [D]irectores en representación del Consejo de Titulares, contra un titular…</u> **Nótese que una vez el director o los integrantes de la Junta de Directores cesan en sus funciones, revierten a su status como titular, sin ninguna ingerencia [sic] directa en los procesos administrativos del condominio, que no sea aquella que le confiere el ser miembro del Consejo de Titulares y la ley no confiere a DACO jurisdicción para acciones contra titulares**". (Énfasis nuestro).

Luego de la enmienda decretada en el 2003, mediante los Artículos 42 y 48 en cuestión, 31 L.P.R.A. § 1293f y 1294, se introdujeron varios cambios al proceso de presentación de querellas. Entre estos: 1) la presentación previa de la querella, impugnando actuaciones u omisiones del agente administrador o de Junta, ante los organismos internos del condominio, entiéndase, la Junta o un Comité de Conciliación; 2) la creación en el DACO de la División Especial de Adjudicación de Querellas de Condominios; y 3) la jurisdicción del Tribunal de Primera Instancia ante reclamaciones de titulares de apartamentos comerciales o profesionales, independientemente de que en el condominio exista uno o más apartamentos dedicados a la vivienda. Dichos cambios, como podemos notar, <u>no</u> inciden <u>ni</u> afectan las cuestiones planteadas en el presente recurso.

De hecho, debe enfatizarse que el DACO ha mantenido su posición respecto al alcance de su jurisdicción, según ésta fue expresada en su comparecencia como *amicus curiae* ante este Tribunal. Ello surge notoriamente del Reglamento Núm. 6728 sobre Condominios, promulgado al amparo de la Ley Núm. 103 del 5 de abril de 2003.[11] En éste, se dispuso lo siguiente en cuanto a la jurisdicción del Departamento:

<u>PARTE V QUERELLAS</u>

<u>SECCIÓN 26: JURISDICCIÓN DEL DEPARTAMENTO</u>

---

[11] Dicho Reglamento derogó el Reglamento 2348 sobre Condominios, promulgado al amparo de la Ley Núm. 157 del 4 de junio de 1976.

Cualquier titular o grupo de titulares de condominios donde exista por lo menos una unidad de vivienda, podrá impugnar ante este Departamento cualquier acuerdo, determinación, omisión o actuación del Consejo de Titulares, del Director o de la Junta de Directores, presidente o del secretario de la Junta de Directores o de la persona que someta el inmueble al Régimen de Propiedad Horizontal, mientras éste sea a su vez, el administrador interino del condominio y del Síndico; siempre y cuando el acuerdo, determinación, omisión o actuación en cuestión sea gravemente perjudicial para el titular o grupo de titulares que impugna o para la comunidad de titulares o cuando dicho acuerdo, determinación, omisión o actuación sea contraria a la Ley, a la escritura de constitución al Régimen de Propiedad Horizontal, al Reglamento del Condominio y a este Reglamento.

El Departamento <u>no tendrá jurisdicción</u> para entender en controversias que surjan contra el agente administrador. Las mismas corresponderán atenderlas al Director o la Junta de Directores y al Consejo de Titulares.

El Departamento <u>no tendrá jurisdicción</u> para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. Igualmente carecerá de jurisdicción en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Departamento <u>sólo atenderá</u> reclamaciones del titular o grupo de titulares que sean propietarios de las unidades residenciales.

También <u>quedará excluido de la jurisdicción</u> del Departamento, toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. **<u>Igualmente quedan excluidos [sic] las querellas entre titulares o cuando el Consejo de Titulares o el Director o la Junta de Directores entable reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia</u>**. (Énfasis nuestro).

-D-

La Regla 16.1 de las de Procedimiento Civil establece que toda persona, sin cuya presencia no pueda adjudicarse la controversia, se haga formar parte del pleito acumulándose como parte demandante o parte demandada, según corresponda.  32 L.P.R.A. Ap. III, R. 16.1. Dicho mandato surge en virtud del interés que poseen las partes a ser acumuladas sobre la controversia a dilucidarse en el pleito, el cual impide la confección de un remedio adecuado sin afectarle sus derechos, de éstas estar ausentes. Las partes que deban acumularse se denominan como partes indispensables. Parte indispensable "es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio". Luis Romero v. Reyes Rivera, res. el 28 de abril de 2005, 2005 T.S.P.R. 58. Esta Regla "busca evitar que la persona ausente se vea privada de su propiedad sin un debido proceso de ley y que el remedio adjudicado sea completo". Luis Romero v. Reyes Rivera, *ante.*

Por otro lado, la Regla 13.1 de las de Procedimiento Civil, sobre las enmiendas a las alegaciones, 32 L.P.R.A. Ap. III, dispone, en lo pertinente, que:

> "Cualquier parte podrá enmendar sus alegaciones una vez en cualquier momento antes de habérsele notificado una alegación respondiente, o si su alegación es de las que no admiten alegación respondiente y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días

de haber notificado su alegación. En cualquier otro caso las partes podrán enmendar su alegación únicamente con permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y <u>el permiso se concederá liberalmente cuando la justicia así lo requiera.</u> ...” [Énfasis nuestro.]

Según se colige de su texto, esta Regla establece una clara directriz en cuanto a la concesión liberal de las enmiendas cuando la justicia así lo requiera. Le concede, en primer lugar, discreción al tribunal para determinar la procedencia de una enmienda a las alegaciones y, en segundo lugar, favorece su concesión. <u>Sierra Quiñones v. Rodríguez Luciano</u>, res. el 14 de febrero de 2005, 2005 T.S.P.R. 9.

Ello no obstante, la liberalidad para conceder enmiendas <u>no</u> es infinita. La concesión de las enmiendas se encuentra condicionada por un juicioso ejercicio de discreción, en el cual se deben ponderar los siguientes elementos: 1) el momento en que se solicita la enmienda; 2) el impacto de la solicitud en la pronta adjudicación de la cuestión litigiosa; 3) la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda; 4) el perjuicio que la misma causaría a la otra parte; y 5) la naturaleza y méritos intrínsecos de la defensa que se plantea. <u>Luis Romero v. Reyes Rivera</u>, *ante*; <u>Sierra Quiñones v. Rodríguez Luciano</u>, *ante*; <u>Epifanio Vidal, Inc. v. Suro</u>, 103 D.P.R. 793 (1976). Dichos factores no operan aisladamente y, de ordinario, sólo se

deniega la enmienda solicitada cuando la misma entraña un perjuicio indebido a la parte concernida, o cuando se presenta en un momento irrazonablemente tardío. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217 (1975). Al presentarse una solicitud de autorización para enmendar las alegaciones, el tribunal debe evaluar --como requisito indispensable para la concesión de la enmienda-- si la misma implica un perjuicio indebido para la parte contraria. "Ciertamente, este debe ser el factor determinante…". Sierra Quiñones v. Rodríguez Luciano, ante.

IV

A. Causa de acción en daños y reclamo de inmunidad

¿Se encuentran exentos de responsabilidad los pasados miembros de una antigua Junta de Directores de un condominio ante reclamaciones del Consejo de Titulares, por sus actuaciones y omisiones negligentes mientras ocuparon sus puestos directivos?

Los ex directores nos señalan que de la Ley de Propiedad Horizontal de 1976 se desprende que el legislador tuvo la intención de estatuir una exclusión de antijuricidad para proteger a las personas que, voluntariamente y sin ánimo de lucro, asumen roles de dirección en un condominio. Aducen, en apoyo a su señalamiento, que en la Ley de Propiedad Horizontal del 1976 no se reconoció una acción de naturaleza civil por

los actos negligentes de los directores. No les asiste la razón.

De una lectura de la Ley de Propiedad Horizontal de 1976 surge todo lo contrario. Ninguno de los artículos de la referida Ley establecen la alegada exclusión de antijuricidad. Si la intención del legislador hubiera sido un supuesto de inmunidad, a favor de los directores y ex directores de un condominio, la Asamblea Legislativa así lo hubiera plasmado expresamente en el cuerpo de la Ley. Sin embargo, no lo hizo, y, contrario a lo que aducen los ex directores, la falta de una disposición expresa respecto a la disponibilidad de una causa de acción en daños en contra de los directores y ex directores de un condominio, no significa que no procede la misma.

El derecho aplicable es claro: "[l]a norma general es que existe responsabilidad en todo caso que medie culpa o negligencia, y no podría interpretarse válidamente que se creó una excepción por el mero silencio". Feliciano Rosado v. Honorable Pablo Matos, Jr., *ante*, pág. 565. La ausencia de disposición explícita respecto a la responsabilidad de los directores y ex directores por sus actuaciones u omisiones negligentes en el desempeño de sus funciones, simplemente implica que debemos remitirnos a la norma general de daños contenida en el Artículo 1802 del Código Civil, *ante*.

Tampoco encontramos razón de política pública que nos lleve a reconocerles inmunidad a éstos. El que los

directores desempeñen sus funciones *ad honorem*, no resulta justificación suficiente para excluir la responsabilidad de los mismos por sus actuaciones u omisiones negligentes. Ello implicaría una injusticia para aquellos titulares que depositaron su confianza en los directores electos, pues, aunque los titulares poseen la facultad de destituirlos, ello no constituye retribución suficiente.

Lo aquí resuelto es cónsono no sólo con la norma general de responsabilidad civil extracontractual, sino también con la intención expresa del legislador, según expuesta en la enmienda decretada en el año 2003. De ésta se deduce que los directores nunca han estado cobijados por inmunidad alguna. Mediante la enmienda decretada en el año 2003, el legislador delimitó la responsabilidad de los directores y ex directores a supuestos de negligencia crasa, fraude o delito. De dicha delimitación y de la deficiencia de la Ley del 1976 al respecto --ante la cual advienen aplicables las normas esbozadas en el Código Civil[12]-- se colige que, previo a la enmienda , los mismos se encontraban sujetos a responder ante todo supuesto de negligencia, fuese ésta simple o crasa.

Ahora bien, lo antes señalado no dispone de la presente controversia, pues los ex directores aducen que no se encuentran sujetos a responder, debido a que la Ley

---

[12] Artículo 12 del Código Civil, 31 L.P.R.A. § 12.

de Propiedad Horizontal de 1976 no les impuso el deber de lealtad reclamado por el Consejo de Titulares.[13] <u>No les asiste la razón</u>. Independientemente de cómo las partes lo denominen, la Ley de Propiedad Horizontal de 1976 les encomendó a los miembros de la Junta de Directores el deber de velar por el buen gobierno y administración del condominio, Artículo 38-D, 31 L.P.R.A. § 1293b-4. Ello constituye un deber impuesto por ley y su incumplimiento conlleva responsabilidad civil extracontractual.[14] <u>En resumen</u>, los ex directores <u>no</u> se encuentran exentos de responsabilidad por los hechos reclamados en la demanda y el Consejo de Titulares deberá establecer mediante prueba los requisitos exigidos por el Artículo 1802 del Código Civil, *ante*, según previamente expuestos.

B.    <u>Jurisdicción del DACO</u>

Establecida la procedencia de la presente causa de acción en daños, ¿posee el DACO jurisdicción exclusiva

---

[13] Los ex directores citan en apoyo a su señalamiento dos proyectos de ley para enmendar la Ley de Propiedad Horizontal de 1976, en los cuales el legislador les impuso explícitamente a los directores los deberes de fiducia y lealtad. Ninguno de los dos proyectos tuvieron éxito, por lo cual, los ex directores entienden que no se les impuso el deber reclamado por el Consejo de Titulares.

[14] La Ley de Propiedad Horizontal, según enmendada por la Ley Num. 103 del 5 de abril de 2003, conservó dicho deber. No obstante, a diferencia de la responsabilidad bajo la Ley del 1976, bajo la versión enmendada en el 2003, la responsabilidad de los directores y ex directores por incumplimiento con los deberes impuestos procede únicamente si se configuró un supuesto de negligencia crasa, fraude o delito.

sobre dicha reclamación en contra de los pasados miembros de la antigua Junta de Directores?

El Consejo de Titulares nos señala que el tribunal apelativo intermedio erró al reconocerle jurisdicción exclusiva al DACO sobre la reclamación en contra de los ex directores. Aduce en apoyo a su señalamiento que la Ley de Propiedad Horizontal no le confirió jurisdicción al DACO para entender en demandas o reclamaciones del consejo en contra de otros titulares. Le asiste la razón.

Tanto bajo el estado de derecho anterior como bajo el actual, la jurisdicción exclusiva del DACO nunca se ha extendido a reclamaciones como la presente, en la cual el Consejo de Titulares les reclama a los pasados miembros de una antigua Junta de Directores por sus actuaciones u omisiones negligentes en el desempeño de sus funciones. De una lectura de los Artículos 42 y 48 antes citados, se deduce que la jurisdicción exclusiva del DACO se extiende a aquellas reclamaciones en contra de la Junta de Directores, en funciones, al momento de la reclamación.

En el presente caso, la reclamación se presentó luego de culminada la incumbencia de los ex directores demandados, por lo cual, la misma constituye una reclamación entre titulares sobre la cual DACO no posee jurisdicción exclusiva, independientemente de que la conducta alegada haya ocurrido mientras los demandados actuaban como miembros de la Junta de Directores. Tanto la Ley de Propiedad Horizontal del 1976, como su versión

enmendada en el 2003, son claras al disponer que DACO posee jurisdicción exclusiva sobre las reclamaciones que presenten los titulares impugnando las determinaciones, actuaciones u omisiones de la Junta de Directores. Al momento de presentada la demanda, la parte demandada no era la Junta de Directores del Condominio, sino cada uno de los ex directores en su carácter personal, ante sus propias actuaciones u omisiones negligentes o culposas en el desempeño de sus funciones como tal. Distinta hubiese sido la situación si los titulares hubiesen presentado una reclamación en daños mientras los demandados aún ocupaban sus posiciones dentro de la Junta de Directores, o más bien, mientras estos aún eran la Junta de Directores, pues, dicha reclamación no podría catalogarse como una entre titulares.[15]

Aun cuando diversos casos resueltos por este Tribunal han avalado la jurisdicción del DACO para entender en reclamaciones de titulares en contra de la Junta de Directores, por el incumplimiento de la Junta con los deberes impuestos por ley, de un análisis de los hechos acaecidos en dichos casos surge que las reclamaciones allí involucradas se presentaron mientras la Junta querellada

---

[15] A pesar de que en las querellas presentadas por varios titulares ante el DACO se solicitó el cese y desiste de ciertas actuaciones de la antigua Junta de Directores, mientras esta aún se encontraba en función, nunca reclamaron daños por las mismas, como hizo el Consejo de Titulares en la demanda presentada ante el Tribunal de Primera Instancia.

aún se encontraba en funciones. Véase: Amill Bracer v. J. Condominio Pumarada, *ante*; Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223 (1994; Srio. DACO v. J. Condominios C. Martí, *ante*.

La falta de jurisdicción aquí decretada no se debe a que el DACO no posea la facultad de conceder el remedio en daños que se reclama. Tanto este Tribunal como la propia Ley de Propiedad Horizontal le reconocen al DACO dicha facultad. Quiñones v. San Rafael Estates, 143 D.P.R. 756 (1997) y Artículo 51 de la Ley de Propiedad Horizontal, según enmendada, 31 L.P.R.A. § 1294c. La falta de jurisdicción del DACO se circunscribe a que el Consejo de Titulares le reclama a un grupo de titulares, ex miembros de una antigua Junta de Directores, en su carácter personal, por sus actuaciones u omisiones negligentes mientras ocuparon sus puestos directivos. Dicho supuesto no se encuentra estatuido dentro de los artículos que le confieren jurisdicción exclusiva al DACO, por lo cual, resolver lo contrario sería decretar la carencia de jurisdicción de los tribunales sin que el legislador haya decretado la misma mediante lenguaje claro y sin ambages. Junta Dir. Cond. Montebello v. Fernández, *ante*.

Milita a favor de nuestra determinación que lo aquí resuelto no dista de la práctica generalizada del DACO, no sólo al momento de los hechos, sino también al presente. Según nos ilustró el DACO en su comparecencia como *amicus curiae* y según surge del Reglamento 6728 decretado en

virtud de la enmienda del 2003, la práctica del DACO ha sido siempre denegar jurisdicción ante reclamaciones como la presente, debido a que la misma se considera una reclamación entre titulares, sobre la cual la Ley de Propiedad Horizontal no le confirió jurisdicción. Dicha interpretación merece nuestra deferencia, pues "[e]s postulado básico en derecho administrativo que la interpretación de un estatuto, por el organismo facultado por ley para velar su administración y cumplimiento, merece gran respeto y deferencia judicial". Srio. DACO v. J. Condominios C. Martí, ante, pág. 819-820.

En fin, el tribunal apelativo intermedio erró al estimar que el DACO posee jurisdicción exclusiva sobre las reclamaciones en contra del los ex directores y el procedimiento en contra de los mismos debe continuar ante el Tribunal de Primera Instancia. Ello en nada afecta los derechos de las partes involucradas pues, "... de ordinario, los tribunales de justicia [son] los llamados a resolver los casos y controversias que se presentan ante ellos". Junta Dir. Cond. Montebello v. Fernández, ante, pág. 234.

C.    Acumulación de cónyuges y sociedades de bienes gananciales

Por último, nos corresponde resolver si, ante las circunstancias acaecidas en el presente caso, procede la acumulación de los cónyuges y de las sociedades conyugales

aquí involucradas, como partes demandadas en la presente causa de acción.

Los ex directores, sus cónyuges y sus respectivas sociedades conyugales nos señalan que no procede la aludida acumulación debido a que las gestiones hechas por los ex directores no generaron beneficios económicos para el patrimonio ganancial. <u>No les asiste la razón</u>.

Aun cuando el Consejo de Titulares no adujo en la demanda y en la demanda enmendada alegaciones específicas en contra de los cónyuges y las sociedades conyugales en cuestión, lo cierto es que, en su oposición a las mociones de desestimación presentadas, el Consejo solicitó que se le permitiese enmendar las alegaciones para expresamente señalar que las sociedades conyugales se beneficiaron económicamente de las gestiones hechas por sus respectivos cónyuges, ex directores de la antigua Junta en cuestión. Tomando en consideración el derecho previamente expuesto sobre las enmiendas a las alegaciones, concluimos que procede la concesión de la enmienda solicitada. El momento procesal en que se solicitó la misma es más que razonable y no encontramos razón alguna que nos lleve a concluir que ésta implica un perjuicio indebido o irrazonable para los ex directores, sus cónyuges y sus respectivas sociedades conyugales. En todo momento estos últimos estuvieron conscientes de que existía una reclamación en contra de las partes en cuestión, pues, a pesar de la falta de alegaciones específicas en su contra, del epígrafe de la

demanda y de la demanda enmendada siempre surgió que la reclamación se instaba en contra de los ex directores, sus cónyuges y sus respectivas sociedades conyugales. El tribunal apelativo intermedio determinó que, sujeto a las enmiendas pertinentes, la reclamación en contra de los cónyuges y las sociedades de bienes gananciales debía continuar ante el Tribunal de Primera Instancia. Coincidimos y, por ende, ordenamos la concesión de la enmienda solicitada.[16]

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[16] Ahora bien, en su alegato ante este Tribunal, los ex directores, sus cónyuges y sus respectivas sociedades conyugales, aducen que las gestiones realizadas por los ex directores no generaron beneficio económico para el patrimonio ganancial, debido a que dichas gestiones fueron realizadas sin ser retribuidas. Independientemente de los méritos de dicha alegación, la misma será objeto de defensa ante el Tribunal de Primera Instancia, pues, ante el momento procesal en que nos encontramos, no estamos facultados para concluir que no medió beneficio económico alguno para el patrimonio ganancial de las respectivas sociedades conyugales. Ello debe ser objeto de prueba ante el tribunal de instancia mediante juicio plenario a esos efectos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio Plaza del Mar, etc.<br>    Demandantes-reconvenidos<br>    recurridos<br><br>       vs.<br><br>Kathy Jetter Klare y otros<br>    Demandados<br><br>Antilles Insurance Co.; Royal & Sun Alliance Ins. Co.<br>    Demandados contra coparte<br>Milagros Troia y otros<br>    Demandados reconvinentes<br>    Demandantes contra coparte<br>    Demandantes contra terceros-<br>      peticionarios<br><br>       vs.<br><br>Mirtha González Rodríguez, et al.<br>    Terceros demandados<br>--------------------------------------<br>Consejo de Titulares del Condominio Plaza del Mar, etc.<br>    Demandante-peticionario<br><br>       vs.<br><br>Kathy Jetter Klare y otros<br>    Demandados-recurridos | CC-2003-454<br>Cons. CC-2003-458<br><br><br><br><br>CERTIORARI |

SENTENCIA

San Juan, Puerto Rico, a 1 de diciembre de 2006

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocando, parcialmente, la emitida por el Tribunal de Apelaciones en el presente caso, devolviéndose éste al foro de instancia para la continuación de los procedimientos de conformidad con lo aquí expuesto y resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol concurrió en el resultado sin opinión escrita. Los Jueces Asociados señor Rivera Pérez y señora Rodríguez Rodríguez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo